### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LESLIE E. WORM,**

               **Plaintiff,**

**-vs-**                         **Case No.  6:04-cv-1733-Orl-31JGG**

**COMMISSIONER OF SOCIAL
SECURITY,**

               **Defendant.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff Leslie Worm ["Worm"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision should be **AFFIRMED**.

### I.    PROCEDURAL HISTORY

On February 28, 2002, Worm filed a claim for disability insurance benefits, claiming disability as of March 16, 2001 due to back pain, shoulder pain, chest pain, headaches, anxiety, and depression. R. 85-87. Her claims were denied initially, R. 71, and upon reconsideration, R. 75. On February 25, 2004, the Honorable James Craig, Administrative Law Judge ["ALJ"], held a forty-minute hearing on Worm's claim in Melbourne, Florida. R. 36 - 68. Attorney Krista Rush represented Worm at the

hearing.  R. 38.  The ALJ heard testimony from Worm, from her friend Carolyn Martinez, and from Joseph Agrusa, an impartial vocational expert ["VE"].

On March 24, 2004, the ALJ issued a decision that Worm was not disabled and not entitled to benefits.  R. 16.  Following a review of the medical and other record evidence, the ALJ found that Worm could not perform any of her past relevant work.  R. 24, Finding 7.  The ALJ found that Worm nevertheless retained the residual functional capacity ["RFC"] to perform a significant range of the physical exertional requirements of light work activity, subject to certain limitations.  R. 24, Finding 6, R. 25, Finding 11.  The ALJ found that Worm:  could lift and carry a maximum of twenty pounds occasionally and ten pounds frequently; could push and pull within these weights, but not on a repetitive basis with the upper and lower extremities; could sit, stand, and/or walk about six hours in an eight-hour workday with normal rest and meal breaks every two hours; could never kneel or crawl, but could occasionally stoop; and had to avoid exposure to extreme heat, cold, wetness, humidity, moving and electrical parts, and electric shock.  Further, she was precluded from carrying out detailed instructions, making complex decisions, and having more than minimal direct contact with co-workers.  R. 24, Finding 6.

The ALJ solicited testimony from the VE, who opined that a claimant of Worm's age, education, past relevant work experience and RFC could perform several sedentary or light work jobs that existed in significant numbers in the local and national economies, including a printer board assembler, an optical final assembler, a circuit board pre-assembler, and an electronics worker.  R. 23.

Applying the Medical-Vocational Guidelines, the ALJ concluded that Worm was not disabled.[1]  R. 25, Findings 12 - 13.

On September 23, 2004, the Appeals Council denied review.  R. 4.  On November 30, 2004, Worm timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1 at 3.  On June 30, 2005, Worm mailed to the United States Attorney's Office a three-page handwritten pro se letter in support of her appeal of the denial of review, plus attachments.  Docket No. 19.  The Commissioner received the memorandum on July 1, 2005, but Worm, proceeding *pro se*, never filed the letter memorandum with the Court.  Docket No. 19-1 at 1. The Commissioner filed Worm's memorandum of law with the Court on August 15, 2005.  Docket No. 19-2.  On October 19, 2005, the Commissioner filed a memorandum in support of her decision that Worm was not disabled.  Docket No. 26.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

According to Worm's *pro se* letter memorandum, the Commissioner failed to consider severe pain and burning in Worm's chest, pain between her shoulders, weak arms and legs, fatigue, and some depression that prevent her from living a normal life.  Docket No. 19-2 at 2.  Also, Worm argues that the Commissioner failed to consider multiple problems shown on an MRI that Worm had paid for herself.  Docket No. 19-2 at 1.

---

[1] The Social Security ALJs face a herculean task.  The Commissioner now expects ALJs to hear and decide 50 to 55 decisions per month according to a former Chief ALJ in a July 2005 presentation at a Federal Judicial Center workshop on disability appeals.  With only the help of non-attorney decision-writers and staff attorneys, the ALJs must rapidly process a monumental backlog of thousands of complex, aging cases.  The effects are felt in the district court. According to the AOUSC, the Middle District of Florida has the third highest volume of disability appeals in the nation.  Each magistrate judge in the Orlando Division, for example, resolves approximately fifty-three appeals every year  —  an average of about one per week.

The Commissioner argues that substantial evidence supports her decision to deny disability. First, the Commissioner argues that substantial evidence supports the ALJ's hypothetical questions to the VE.  Docket No. 26 at 5-6.  Second, the Commissioner argues that the ALJ properly evaluated Worm's complaints of pain.  Docket No. 6-8.

III.  **THE STANDARD OF REVIEW**

A.  **AFFIRMANCE**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.     REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).   A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

**C.     REMAND**

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).   To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record

of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).

After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for

failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.     DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six.  *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text.  In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction.  *Id.*  In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court.  *Id.*

also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

**B.      THE FIVE STEP EVALUATION**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work)

prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. *See* SSR 82-61. If so, the claimant is not disabled. If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy. SSR 82-61. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability. *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.   OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P,

Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.   TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997);

*Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.    PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless she furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## F.   CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination

is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.     MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

### H.     THE EVALUATION OF MENTAL DISORDERS

The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment, as well as consideration of the degree of limitation such impairment may impose on the individual's ability to work.  The listings for mental disorders are arranged in nine diagnostic categories.  20 C.F.R. Pt. 404, Subpt. P, App. 1.   The criteria in paragraphs B and C of the listings for mental disorders describe those functional limitations associated with mental disorders which are incompatible with the ability to work — i.e. limitations in functional areas deemed essential to work.  A mental impairment is medically equivalent to a listed mental

impairment if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526.  An individual meeting or equaling the criteria could not reasonably be expected to engage in gainful work activity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity ["RFC"] which would enable them to engage in substantial gainful work activity.  The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled, but the impairment is nevertheless severe.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

For mental disorders, severity is assessed in terms of the functional limitations imposed by the impairment.  Functional limitations are assessed using the criteria in paragraph B of the listings for mental disorders (activities of daily living; social functioning;  concentration, persistence, or pace; and ability to tolerate increased mental demands associated with competitive work).  A "marked" degree of limitation means more than moderate, but less than extreme.  A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The Commissioner employs a technique to ensure that ALJ's obtain, consider, and properly evaluate all evidence needed to evaluate mental impairment severity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The technique is used in connection with the sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520a and 416.920a.

The presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals and

clinics. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Information from both medical and non-medical sources may be used to obtain detailed descriptions of the individual's activities of daily living;  social functioning;  concentration, persistence and pace;  or ability to tolerate increased mental demands (stress). This information can be provided by programs such as community mental health centers, day care centers, and family members who have knowledge of the individual's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1. In some cases descriptions of activities of daily living or social functioning given by individuals or treating sources may be insufficiently detailed and/or may be in conflict with the clinical picture otherwise observed or described in the examinations or reports. It is necessary to resolve any inconsistencies or gaps that may exist in order to obtain a proper understanding of the individual's functional restrictions.

An individual's level of functioning may vary considerably over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1. This evidence should include treatment notes, hospital discharge summaries, and work evaluation or rehabilitation progress notes if these are available. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Some individuals may actually have worked during the period of time pertinent to the determination of disability. Information concerning the individual's behavior during any attempt to work and the circumstances surrounding termination of the work effort are particularly

useful in determining the individual's ability or inability to function in a work setting.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

Particular problems are often involved in evaluating mental impairments in individuals who have long histories of repeated hospitalizations or prolonged outpatient care with supportive therapy and medication.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms.  Such individuals may be much more impaired for work than their signs and symptoms would indicate.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The results of a single examination may not adequately describe these individuals' sustained ability to function.  It is, therefore, vital to review all pertinent information relative to the individual's condition, especially at times of increased stress.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  It is mandatory to attempt to obtain adequate descriptive information from all sources which have treated the individual either currently, or in the time period relevant to the decision.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

Attention must be given to the effect of medication on the individual's signs, symptoms and ability to function.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  While psychotropic medications may control certain primary manifestations of a mental disorder, e.g., hallucinations, such treatment may or may not affect the functional limitations imposed by the mental disorder.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  In cases where overt symptomatology is attenuated by the psychotropic medications, particular attention must be focused on the functional restrictions which may persist.  These functional restrictions are also to be used as the measure of impairment severity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

In some cases, the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of impairment, the ALJ will consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsening. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement. 20 C.F.R. § 404.1594 (iv).

## V.   **APPLICATION AND ANALYSIS**

### A.   **THE FACTS**

Worm was born on February 22, 1955 (R. 41), and was 49 years-old on the day of the ALJ's hearing on February 25, 2004. R. 36. Worm was 46 years-old when her disability insured status expired on June 30, 2001. R. 39. She graduated from high school, and attended one year of college. R. 117. She has past relevant work as a housekeeper, fisher, bank teller, and customer service representative. R. 124. Worm is unable to perform any of her past relevant work. R. 24, Finding 7. She has not engaged in any substantial gainful activity since March 16, 2001, the alleged onset date of her disability. *Id.*, Finding 2.

Worm alleges that she became disabled on March 16, 2001 due to a variety of musculoskeletal pain complaints, including headaches and low back, shoulder, and chest pain. R.111. At the hearing, Worm testified that the pain she experiences stems from two earlier injuries – one from when she slipped and fell into a conveyer belt in 1985, and another from a car accident in 1991. R. 43.

In 1995 and 1996, Worm sought occasional treatment from Dr. Roberta S. Rose, D.O., for a variety of ailments, including headaches and pain in her back, chest, and arms. R. 154-66. Dr. Rose made no specific diagnoses, and treated Worm with analgesic pain relievers and anti-depressant medications. *Id.*

Beginning in 1999, Worm also sought occasional treatment from Dr. Ming T. Lai for similar ailments, including congestion, chest pains, depression, and a stiff neck. R. 254-72. On May 22, 2000, Worm saw Dr. Lai, and complained of a stiff neck and headaches. R. 265. At various times, Dr. Lai prescribed muscle relaxants and pain medication for Worm's complaints. R. 254-72. A cervical X-ray on April 20, 2000 (upon referral from Dr. Lai) showed that Worm had normal mobility and other than a slight straightening of the cervical lordosis, was otherwise normal. R. 280. Worm reported, on September 22, 2000, that she was experiencing memory loss, chest pain, and a stiff neck. R. 258. Dr. Lai assessed depression and anxiety, and prescribed Xanax plus increased Worm's does of Celexa. *Id.* Dr. Lai never ordered any laboratory tests. R. 254-72.

On November 27, 2000, neurologist Dr. Thomas Hoffman examined Worm upon referral from Dr. Lai. Dr. Hoffman reported that a magnetic resource image ("MRI") taken of Worm showed only some bulging annuli, but was otherwise normal. R. 173. An EMG and nerve conduction study, both conducted the same day as the MRI, showed the Worm's condition was normal. R. 168, 174-75. On December 12, 2000, after a follow-up visit by Worm, Dr. Hoffman noted that he did not believe that Worm had a neurological problem, but that she had "some underlying depression with a tendency for somatoform pain complains and various musculoskeletal symptoms." R. 168. Dr. Hoffman prescribed regular exercise and use of minor analgesics or anti-inflammatory medications. *Id.* He cautioned Worm against her use of muscle relaxants and anti-anxiety medications, as they may cause drowsiness. *Id.*

On February 26, 2001, Worm saw Dr. Lai, and reported pain to her lower back and severe headaches. Dr. Lai prescribed 24 hours of bed-rest along with prescriptions for Zanaflex, Loratab, and Soma. R. 253. On February 28, 2002, Worm filed a claim for disability insurance benefits, claiming

disability as of March 16, 2001 due to back pain, shoulder pain, chest pain, headaches, anxiety, and depression. R. 85-87.

The Office of Disability Determinations referred Worm for psychiatric and physical consultative examinations. On May 6, 2002, Dr. Seifer performed the psychiatric consultative examination (R. 176-78), and noted that Worm had a situationally anxious manner with a hysteroid component, and "appear[ed] to have some depressed and anxious features." R. 178. He concluded that she could follow one and two-step instructions, although she would have difficulties relating to others in a work setting. *Id.*

Dr. James Wilkens performed a physical consultative examination on May 24, 2002. R. 179. Worm exhibited significant limitation of motion in her left shoulder and leg. R. 180. She had no problems ambulating. *Id.* Dr. Wilkens noted that her grip strength in both hands was normal, and that her right shoulder, elbows, wrists, and all fingers were normal. *Id.* He further stated that her hips, knees, and ankles were "all normal in terms of range of motion." *Id.* Worm exhibited no muscle atrophy on examination. Her LS spine was minimally tender. *Id.* Dr. Wilkens also noted that she could bend, stoop, and squat, but "she says it increases her pain so she does not do it." R. 181. Dr. Wilkens opined that Worm was limited to part-time sedentary work, and recommended an X-ray and that the "best approach" was to have Worm evaluated by an orthopedist, "obtain any old records and possibly rescan her." R. 181. Dr. Wilkens did not review any prior records. *Id.* X-rays of Worm's spine had been taken on May 15, 2002 (R. 185), and x-rays of her left shoulder were taken on June 28, 2002 (R. 184). All x-rays were essentially normal. R. 184-85.

In July 2002, the non-examining state agency physicians opined that Worm's ailments, including her pain and depressive and anxiety disorders, caused Worm some limitations, but that

Worm could perform light work activity. R. 186-206.  The physicians concluded that Worm could: lift and/or carry twenty pounds occasionally and ten pounds frequently; walk, stand, and/or sit for about six hours in an eight-hour workday; and push and/or pull without limitation other than the limitations for lift and/or carry.  R. 187.  The state agency physician's mental RFC assessment indicates that Worm was "not significantly limited" in most mental capacities, but was "moderately limited" in her abilities to: carry out detailed instructions, maintain attention and concentration for extended periods of time, interact with co-workers without distracting them, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 208-09. Worm was initially denied disability insurance benefits on July 22, 2002.  R. 71.

Upon referral from Dr. Lai, Dr. Stanley Higgins performed an MRI of Worm's thoracic spine and cervical spine on February 7, 2003.  R. 273-74.  The MRI showed mild thoracic stenosis and mild cervical stenosis, but  was generally otherwise normal.  *Id.*  In February 2004, Dr. Lai wrote a letter that did not specify an address, except "to whom it may concern," stating that Worm "has been diagnosed with chronic back pain and arthritis in her back which causes her to have headaches and radiculopathy in both upper extremities."  R. 321.  On February 9, 2004, Dr. Lai wrote on a prescription pad that Worm "is unable to work due to medical condition @ present time (sic)."  R. 322.

## B.    THE ANALYSIS

Worm mainly alleges musculoskeletal pain, but also occasionally complains of depression. Worm alleges disability as of March 16, 2001.  Thus, as her insured status expired on June 30, 2001, Worm must establish that she became disabled during this three-month period.  The record, including

the medical evidence and testimony from the hearing, shows that substantial evidence supports the ALJ's conclusion that Worm is not disabled.

### 1.      The ALJ Properly Evaluated Worm's Allegations of Pain

Worm principally alleges that the ALJ failed to properly evaluate her complaints of pain. At the administrative hearing, Worm testified that she believes she is disabled primarily due to the pain she experiences. R. 42-46. Worm stated that she suffers from "severe" headaches, "numb" arms (with pain extending to her fingers), and a "stiff" neck. R. 44-45. She also testified that the pain also extends to her back, shoulder blades, breast area, hips, and her left leg. R. 46. She also testified that she often "drops things" because of the pain extending to her hands. R. 45. Worm states that she lies or sits in a recliner chair for fifteen to twenty minutes at a time, and that during the day, she relieves her pain by "jumping up and down constantly just trying to find some happy medium." R. 46-47.

Worm further testified that her pain medication made her nauseous approximately fifteen to twenty minutes after ingestion, and that she has difficulty concentrating because of the medications. R. 49. Worm stated that she felt like she had depression, and noted that she had taken medicine in the past that helped "somewhat." R. 50. She testified that because of the pain, she can sleep four or five hours a night at the most, and that she cannot walk very far. R. 50-51. She also stated that she drives a standard shift car, but has some problems because she has difficulty moving her leg and hands. R. 47.

The ALJ correctly found that "there is no objective medical or 'other' credible evidence of a medically determinable impairment which can possibly cause the degree of limitation [Worm] alleges." The record shows that ALJ properly considered Worm's statements about pain, and properly concluded that Worm was not disabled (as defined by the statute and regulations) by her pain. The

evidence shows that Worm suffers from generalized musculoskeletal complaints and depressive and anxiety disorders.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ correctly applied the "pain standard."  Prior to June 2001, the record reflects only occasional treatment for ailments.  Dr. Lai  treated Worm from 1999 until at least February 2004.  R. 254-72.  Throughout this period, Dr. Lai treated Worm extremely conservatively, mainly with muscle relaxants and pain medication.  *Id.*   In fact, all of Dr. Lai's treatment notes in March 2001, the same month as the alleged onset date of Worm's disability, indicate that Worm complained of and was treated mainly for ailments other than pain, such as a sore throat and fever.  R. 250-252.  Other than routine treatment, Worm received no significant treatment before the date her insured status expired in June 2001.

Worm's MRI  results were all generally normal, including the MRI taken in November 2000 and the MRIs taken as late as February 2003.  R. 173, 273-74.  The EMG and nerve conduction study taken on November 27, 2000 were normal.  R. 168, 174-75.  All of Worm's x-rays were normal.  R. 184-85.  Only two doctors come close to stating that Worm's pain was disabling.  In May 2002, Dr. Wilkens opined that Worm was limited to part-time sedentary work (R. 181).  In February 2004, Dr. Lai stated that Worm had "chronic back pain and arthritis in her back" (R. 321), and in a separate note

that Worm was "unable to work due to [a] medical condition" (R. 322).  Neither doctor referred to any specific findings or objective tests when stating these opinions.  R. 181, 321-322.  Dr. Wilkens reviewed no prior records, and suggested further evaluation and x-rays.  R. 181.  From his treatment notes, it is clear that he based his opinion on Worm's subjective complaints of pain (*id.*) which the ALJ correctly noted (R. 20).

As stated earlier, x-rays taken in the same month as Dr. Wilkens' evaluation were essentially normal.  R. 184-85.  Dr. Lai's notes were both written in February 2004, almost three years after Worm's insured status expired.  The notes are conclusory and inconsistent with her conservative treatment of Worm.  R. 321-22.  Further, in July 2002, state agency physicians determined that Worm was capable of performing light duty work, subject to certain limitations (R. 186-206), opinions which the ALJ correctly adopted (R. 20).  The ALJ conducted and wrote an extensive review of Worm's medical records and evidence, and correctly concluded that Worm was not disabled.  Substantial evidence does not show an underlying medical condition of such a severity that could reasonably be expected to give rise to Worm's allegations of totally disabling pain.

On appeal, Worm raises no specific objection to the ALJ's decision to not completely credit her testimony about pain.  This Court nevertheless reviews that decision, and finds no error.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  The ALJ stated that Worm's testimony at the hearing "cannot be fully credited" because Worm "simply does not have a medically determinable musculoskeletal or neurological condition which can reasonably cause the degree of pain and limitation she alleges."  R. 19.  The Court will not disturb the ALJ's credibility finding.

-25-

**2.      Substantial Evidence Supported the ALJ's Hypothetical Questions**

The ALJ correctly posed to the VE hypothetical questions that were supported by substantial evidence.  As discussed above, the evidence shows that Worm experienced back and lower extremity pain, but does not prove that the pain was totally disabling.  In addition, the record shows mild mental impairments.  Dr Hoffman did not believe Worm had a neurological problem.  R. 168.  Dr. Lai assessed that Worm had depression and anxiety, but treated her conservatively with Xanax and other medications.  *See, e.g.,* R. 258.  Dr. Seifer concluded, after the psychiatric consultative examination, that Worm exhibited "some" depression and anxiety, but did not conclude that Worm had any severe limitations.  R. 178.  He stated that she would have "some difficulties relating to others in the work setting."  *Id.*  In the mental RFC assessment, the state agency physician concluded that Worm mostly did not have any significant limitations, but noted a few moderate limitations (R. 208-209) — all of which the ALJ correctly adopted (R. 20).

After a thorough discussion of the medical evidence, the ALJ found that Worm could perform light work; could lift and carry a maximum of twenty pounds occasionally and ten pounds frequently; could push and pull within these weights, but not on a repetitive basis with the upper and lower extremities; could sit, stand, and/or walk about six hours in an eight-hour workday with normal rest and meal breaks every two hours; could never kneel or crawl, but could occasionally stoop; and had to avoid exposure to extreme heat, cold, wetness, humidity, moving and electrical parts, and electric shock.  Further, the ALJ found that Worm was precluded from carrying out detailed instructions, making complex decisions, and having more than minimal direct contact with co-workers.  R. 24, Finding 6, R. 25, Finding 11.

The ALJ properly determined that Worm could not perform her past relevant work.  R. 24, Finding 7.  The burden, therefore shifted to the Commissioner to show that there was other work in that national economy that Worm could perform.  Even though the ALJ found Worm capable of performing a significant range of light work activity, the ALJ appropriately obtained testimony from a VE, and did not rely exclusively on the "grids."  Reliance on VE testimony is proper where the hypothetical questions posed by the ALJ accurately depict a claimant's impairments.

During Worm's hearing, the ALJ asked the VE a detailed series of hypothetical questions that correctly assumed work restrictions similar to Worm's.  The VE considered an individual of Worm's background and "vocational profile," whose limitations included:

> no repetitive, continuous pushing in the upper/lower extremities; no kneeling and crawling; occasionally stoop or crouch; no exposure to the weather, extreme heat or cold, or wetness and humidity; no exposure to moving mechanical parts, electrical shock, or high places; no vibrating surfaces or objects; no detailed or complex work; minimal direct contact with the public; minimal contact with co-workers.

R. 58.  The VE stated that Worm would not be able to perform her past relevant work, but was capable of performing other work available in the national economy.  R. 58-59.  The VE identified positions involving light work activity, such as printed circuit board pre-assembler and electronics worker, and positions involving sedentary work, such as printed circuit board touch-up screener and optical final assembler.  R. 61.

Next, the ALJ asked the VE to assume that an individual had the same limitations already stated, plus additional limitations in that "reaching, handling, fingering and feeling would be limited to no more than occasionally cumulatively throughout the day," if the individual "were to miss three days a month or more on a regular basis."  R. 61.  "If this individual had to leave the work area two or three times a day other than breaks and meals to lie down, sit."  R. 62.  The VE responded that such

a person with either one of the limitations (not both) would then not be capable of performing the previously articulated positions. *Id.* Worm's attorney then asked if the additional limitation were that Worm had to alternate lying down and sitting every fifteen to twenty minutes, or alternate standing and sitting every five minutes, whether Worm could still perform those jobs stated. R. 62. The VE responded that Worm could not work, other than being a house sitter. R. 63. Nothing in the record, other than Worm's testimony discussed earlier, indicates that Worm had these additional limitations or that the ALJ's hypothetical questions did not accurately reflect Worm's abilities. The ALJ's reliance on the VE's testimony was proper, and yielded the same result as that obtained when the grids were applied. R. 22-23. Both the grids and the VE's testimony support the ALJ's conclusion that Worm was not disabled.

> **3.      The ALJ Correctly Accorded Weight to the Opinions of Worm's Physicians**

The ALJ properly accorded less weight to the opinions of Dr. Lai and Dr. Wilkens. As stated earlier, on February 9, 2004, Dr. Lai wrote that Worm was "unable to work **@ present time** due to her physical condition (sic)." R. 322 (emphasis added). The ALJ did not afford the treating physician's opinion "controlling weight" because it was conclusory, inconsistent with the substantial evidence of record, and unsupported by the history of prescribed treatment. The Court, after reviewing the record finds that the ALJ's decision was correct. Further, Dr. Lai's opinion that Worm could not work at the "present time" came almost three years after Worm's insured status expired.

The ALJ also considered, but found "unpersuasive" Dr. Wilkens' opinion that Worm was limited to part-time sedentary work. R. 20. As discussed earlier, the ALJ correctly noted that Dr. Wilkens' opinion was based on Worm's subjective complaints. The opinion is contradictory to other

evidence in the record, mostly notably, the normal x-ray results which were recommended by Dr. Wilkens.  All treating physicians treated Worm very conservatively over a number of years, in particular, during the period before Worm's insured status expired.  Again, all x-rays, MRI's, and other studies were essentially normal.  The evidence is consistent with the ALJ's adoption of the state agency physicians' conclusions.  The ALJ accorded proper weight to Worm's treating and consultative sources.

### 4.      The ALJ Properly Considered Worm's MRI

While Worm's letter memorandum mainly details the pain she experiences, Worm also specifically states that her "MRI was not even taken into consideration," and that "[t]he MRI clearly shows [Worm has] multiple problems."  R. 19-2 at 1.  The ALJ considered and discussed all results of the MRIs in the record.  R. 18, 19.  The ALJ correctly states that an MRI of Worm's cervical spine showed bulging annuli at C5/C6 and C6/C7, but was essentially normal.  R. 18.  The ALJ also accurately noted that the MRIs of the thoracic spine and cervical spine taken in February 2003 showed mild stenosis, but were otherwise normal.  R. 19.  The ALJ properly considered all of the MRIs, and they support the ALJ's conclusion that Worm was not disabled.

## VI.      **CONCLUSION**

For the reasons stated above, the decision of the Commissioner should be **AFFIRMED**. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the

report, and shall bar an aggrieved party from attacking the factual findings on appeal.

      **DONE AND ORDERED** this 6th day of February, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Leslie E. Worm
RR1, Box 368
Lakeland, GA  31638

The Honorable Gregory A. Presnell
United States District Judge

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL                33602

The Honorable James E. Craig
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL                32817